[Cite as *In re Adoption of C.J.C.*, 2016-Ohio-4909.]

STATE OF OHIO        )                IN THE COURT OF APPEALS
                        )ss:             NINTH JUDICIAL DISTRICT
COUNTY OF WAYNE     )

IN RE ADOPTION OF C.J.C.                C.A. No.      15AP0040

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    2014 PB-A 001413

DECISION AND JOURNAL ENTRY

Dated: July 11, 2016

HENSAL, Judge.

{¶1} Brett Topovski appeals a judgment of the Wayne County Probate Court that determined that his consent to a petition for adoption of his son is not required because he failed without justifiable cause to have more than de minimis contact with his son for one year. For the following reasons, this Court affirms.

I.

{¶2} Shannon Cicconetti gave birth to C.L.S. in July 2008. DNA testing later established that Mr. Topovski is C.L.S.'s father. In July 2014, Anthony Cicconetti petitioned to adopt C.L.S. and change his name to C.J.C. In his petition, Mr. Cicconetti alleged that he did not need Mr. Topovski's consent to the adoption because Mr. Topovski had failed to provide for C.L.S.'s maintenance and support and because Mr. Topovski had not had more than de minimis contact with C.L.S. for at least one year before the date of the petition.

**{¶3}** After receiving notice of the adoption petition, Mr. Topovski objected to it, alleging that Ms. Cicconetti had intentionally interfered in his relationship with his son. The probate court subsequently held a hearing on whether Mr. Topovski's consent was required for the adoption to proceed. Following the hearing, the court entered a judgment concluding that the adoption could proceed without Mr. Topovski's consent because he "failed without justifiable cause to provide more than de minimis contact with [C.L.S.] from July 21, 2013[,] through July 21, 2014." Mr. Topovski has appealed, assigning two errors.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. BRETT TOPOVSKI WHEN THE TRIAL COURT REFUSED TO ALLOW THE ADMISSION OF EVIDENCE RELEVANT TO "JUSTIFIABLE CAUSE" FOR FAILING TO COMMUNICATE WITH HIS CHILD FOR ONE YEAR PRECEDING THE FILING OF THE PETITION FOR ADOPTION UNLESS SUCH EVIDENCE OCCURRED WITHIN THE ONE YEAR PRECEDING THE FILING OF THE ADOPTION PETITION.

**{¶4}** Mr. Topovski argues that the probate court incorrectly limited the evidence he could present about the events that occurred before he stopped communicating with C.L.S. He argues that he had a substantial relationship with his son before July 19, 2013, and needed to establish that prior relationship to demonstrate that it was Ms. Cicconetti's actions on July 19, 2013, that caused him to go over a year without contacting his son. In general, "[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus.

**{¶5}** Revised Code Section 3107.07(A) provides that the consent of a parent of a minor is not required for an adoption if the court "finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the

minor * * * for a period of at least one year immediately preceding * * * the filing of the adoption petition[.]" "The party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the parent failed to communicate with the child during the requisite one-year period and that there was no justifiable cause for the failure of communication." *In re Adoption of Holcomb*, 18 Ohio St.3d 361 (1985), paragraph four of the syllabus (construing former version of R.C. 3107.07(A) that contained the language "to communicate" instead of "provide more than de minimis contact"). According to the Ohio Supreme Court, "[s]ignificant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for the non-custodial parent's failure to communicate with the child." *Id*. at paragraph three of the syllabus.

{¶6} This Court has held that, "[i]n examining whether the parent's failure [to have contact] was justified, the [trial] court is not restricted to focusing only on events occurring during the statutory one-year period[,] * * * [but] must also examine preceding events having any bearing on the parent's failure to communicate with his child." *In re Adoption of Lauck*, 82 Ohio App.3d 348, 353 (9th Dist.1992). Mr. Topovski argues that the probate court failed to acknowledge that rule when it limited his cross-examination of Mr. Cicconetti. When Mr. Cicconetti answered on cross-examination that he had been at a party where both Mr. Topovski and C.L.S. were present, Mr. Cicconetti's lawyer asked for clarification about when the party had occurred, explaining that he thought that only interactions during the one-year period that preceded the adoption petition were relevant. Following an exchange with counsel, the probate court stated that it did not believe Mr. Topovski's contact with C.L.S. before the one-year period was relevant. It, therefore, told Mr. Topovski that, although it would entertain testimony "in

generalities * * * about the fact * * * that he had a relationship prior to [July 19, 2013] * * *. I'm not concerned with the specifics of prior to July of 2013."

{¶7} Mr. Topovski also argues that the probate court incorrectly limited his cross-examination of Ms. Cicconetti. When Mr. Topovski asked Ms. Cicconetti how long it took for him to come to the hospital after C.L.S.'s birth, Mr. Cicconetti's lawyer objected. The court asked Mr. Topovski where he was going with his inquiry, and Mr. Topovski answered that he was trying to establish that he had had continuous contact with his son up until July 19, 2013. The court explained that no one was disputing the fact that he had had contact with C.L.S. before July 19, 2013. It, therefore, asked Mr. Topovski to "limit the scope of the testimony to the one year immediately preceding the filing of the Petition [because] the other is not really an issue before the Court."

{¶8} Mr. Topovski further argues that the probate court improperly limited his direct examination of C.L.S.'s paternal grandfather. When the grandfather began talking about his relationship with C.L.S., Mr. Cicconetti's lawyer objected. Mr. Topovski indicated that he was trying to show that the family had a relationship with C.L.S. before July 19, 2013, but the court reminded him that the only issues before the court were whether he had failed without justifiable cause to have more than de minimis contact with C.L.S. or failed to financially support his son. It also told Mr. Topovski that "the child's relationship with the grandparents is not really an issue before the Court today." Although it overruled Mr. Cicconetti's objection, it asked Mr. Topovski not to "stray down * * * [t]he wrong path." Shortly thereafter, when Mr. Topovski asked the grandfather whether he had taken care of C.L.S. during the child's first five years of life, the court again reminded Mr. Topovski to "talk about the one year immediately preceding the petition and keep it at that."

{¶9} Although the court redirected Mr. Topovski back to the one-year period several times during the testimony, it did not sustain an objection to any of his questions about earlier events. Mr. Topovski has not identified any questions that he was not able to ask the witnesses about the earlier time period. Furthermore, the probate court correctly noted that Mr. Cicconetti did not challenge the fact that Mr. Topovski had a relationship with C.L.S. before July 19, 2013.

{¶10} We note that the day that Mr. Topovski last had contact with his son, July 19, 2013, was actually before the one-year period that the court focused on at the hearing. The parties, however, were able to present extensive evidence about the events of that day, which Mr. Topovski alleged resulted in his not being able to contact his son. Upon review of the record, we conclude that Mr. Topovski has not demonstrated that the probate court prevented him from presenting any relevant evidence concerning whether he had justifiable cause for not contacting his son, let alone that it abused its discretion when it prohibited such evidence. Mr. Topovski's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT'S FINDING THAT MR. TOPOVSKI FAILED TO COMMUNICATE WITH HIS CHILD FOR ONE YEAR WITHOUT JUSTIFIABLE CAUSE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶11} Mr. Topovski argues that the probate court incorrectly found that he did not have justifiable cause for failing to maintain contact with his son during the one-year period that preceded Mr. Cicconetti's adoption petition. Although Mr. Topovski only refers to the weight of the evidence in his assignment of error, he also argues in his brief that the record did not contain clear and convincing evidence to support the probate court's finding.

{¶12} Under Section 3107.07(A), even if a parent has not had more than de minimis contact with his child for the requisite one-year period, "the party petitioning for adoption has the

burden of proving, by clear and convincing evidence, that * * * there was no justifiable cause for the failure of communication." *Holcomb*, 18 Ohio St.3d at 368. "No burden is to be placed upon the non-consenting parent to prove that his failure to communicate was justifiable." *Id*. Whether lack of justifiable cause exists is a question of fact for the probate court. *Id*.; *In re Doe*, 123 Ohio App.3d 505, 508 (9th Dist.1997). "Once the clear and convincing standard has been met to the satisfaction of the probate court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof." *Holcomb*, 18 Ohio St.3d at 368. "The determination of the probate court should not be overturned unless it is unsupported by clear and convincing evidence." *Id*.

{¶13} If there is clear and convincing evidence in the record to support the probate court's findings, this Court can proceed to review the weight of the evidence. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 23 (explaining that "the sufficiency of the evidence is quantitatively and qualitatively different from the weight of the evidence."). A probate court's finding that a "parent has failed without justifiable cause" under Section 3107.07(A) "will not be disturbed on appeal unless such determination is against the manifest weight of the evidence." *In re Adoption of Bovett*, 33 Ohio St.3d 102 (1987), paragraph four of the syllabus. In reviewing the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Alterations original.) *Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179 at ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001).

**{¶14}** Because Mr. Topovski argues both that Mr. Cicconetti failed to submit sufficient evidence and that the probate court's finding was against the weight of the evidence, we begin our analysis by examining whether there was clear and convincing evidence to support the probate court's lack-of-justifiable-cause finding. The clear and convincing evidence standard "requires that the proof * * * produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Holcomb*, 18 Ohio St.3d at 368, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶15}** On July 19, 2013, Ms. Cicconetti sent a friend to pick up C.L.S. from Mr. Topovski's house. Mr. Topovski refused to let her take C.L.S., but when he stepped away from the door the friend either convinced C.L.S. to get his things and come outside or she entered Mr. Topovski's house and retrieved C.L.S. herself. When Mr. Topovski realized that C.L.S. was outside, he confronted the friend. Police arrived shortly thereafter, but did not charge anyone. Ms. Cicconetti also delivered a "No Trespass Letter" to Mr. Topovski that day. It instructed Mr. Topovski "to cease, immediately and permanently, attempting to contact me in person, by telephone, or by any other means." It told him not to enter the property where she lived or to attempt to contact her at her home, school, or work addresses. It further told him that she was sending a copy of the letter to local law enforcement agencies and that she would pursue any and all of her legal options if Mr. Topovski attempted to contact her.

**{¶16}** Mr. Topovski testified that he took the letter that Ms. Cicconetti sent him seriously. He explained that he was once convicted of trespassing after he attempted to take some money to his other son, who was living with the son's mother at the time. According to Mr. Topovski, he spent 30 days in jail before the court "realized [it] was a mistake and * * * helped me get custody of [the son] once the truth was revealed and understood." Mr. Topovski

testified that he had regular contact with C.L.S. until he received the letter and that it was the letter that prevented him from arranging visitation with Ms. Cicconetti. He also said that Ms. Cicconetti had not contacted him about seeing C.L.S.

{¶17} Although Ms. Cicconetti's letter directs Mr. Topovski not to contact her, it does not forbid him from having contact with C.L.S. Mr. Topovski acknowledged that he did not attempt to send any presents or cards to C.L.S. during the one-year period. *Compare In re Adoption of Lauck*, 82 Ohio App.3d 348, 352 (9th Dist.1992) (noting that child's mother refused and returned mail that father sent to his children). He also admitted that he had met with a lawyer a couple of times during the one-year period about filing a motion for visitation. According to Mr. Topovski, he delayed filing the motion because he thought the police were still investigating the July 19, 2013, incident and determining whether to bring charges against Ms. Cicconetti's friend. Mr. Topovski testified that he wanted to have all of his evidence together before filing a motion for visitation, including a final police report about the incident. He explained that, when he sought custody of his other child, he spent nine months recording conversations with the child's mother so that when he "got into the courtroom, I had papers upon papers of transcribed lies and then I had a solid base which * * * helped a lot." Mr. Topovski, however, did not present any physical evidence to corroborate his claim that he worked on a motion for visitation during the one-year period.

{¶18} The probate court found that Ms. Cicconetti's letter to Mr. Topovski, even in light of his criminal history, did not amount to justifiable cause for failing to pursue a relationship with C.L.S. It noted that there was no court order prohibiting him from contacting Ms. Cicconetti or C.L.S. It noted that the letter did not even refer to C.L.S., but only Ms. Cicconetti. It also found that Mr. Topovski's own actions, specifically his volatile reaction to the friend

trying to pick up C.L.S., precipitated the letter. It further found that he could have pursued his visitation rights in juvenile court, which he knew he could because he had sought and won custody of his other son in juvenile court. Finally, it gave credence to Ms. Cicconetti's testimony that she ran into Mr. Topovski at a local carnival in July 2014 and that, when someone pointed out that C.L.S. was present, Mr. Topovski's response was, in essence, "who cares?"

{¶19} Because Mr. Topovski's reason for not filing a motion for visitation earlier was his decision to wait on a full police report and not on anything that Ms. Cicconetti did, the probate court's lack-of-justifiable-cause finding is not "unsupported by clear and convincing evidence." *Holcomb*, 18 Ohio St.3d at 368. We, therefore, will proceed to examine whether the court's finding was against the manifest weight of the evidence.

{¶20} Mr. Topovski argues that the probate court should have found that Ms. Cicconetti used the events of July 19, 2013, to cut off his contact with C.L.S. In addition to what has already been described, he notes that, before she even sent her friend to retrieve C.L.S. from his house that day, Ms. Cicconetti sent him text messages indicating that she thought C.L.S. would be better off when Mr. Cicconetti adopted him. She also sent a "no trespass" letter to each of Mr. Topovski's parents so that she would not have to deal with any of them anymore. According to Mr. Topovski, all of Ms. Cicconetti's acts that day were designed to cut him off from his son, for which she should not benefit.

{¶21} In *Holcomb*, the Ohio Supreme Court explained that "[t]he probate court is in the best position to observe the demeanor of the parties, to assess their credibility, and to determine the accuracy of their testimony." 18 Ohio St.3d at 367. The probate court found Ms. Cicconetti to be a more credible witness than Mr. Topovski. It noted that it was Mr. Topovski who originally told Ms. Cicconetti that he wanted her to pick up C.L.S. from his home on July 19,

2013, even though he knew that she was working at the time. It found that Mr. Topovski knew Ms. Cicconetti's friend and that the friend had picked C.L.S. up from Mr. Topovski's house on previous occasions without incident. On July 19, 2013, however, Mr. Topovski chose to act in a volatile and hostile manner toward the friend and allege that the friend was attempting to kidnap C.L.S., precipitating Ms. Cicconetti's letter.

{¶22} Upon review of the record, we conclude that the probate court's findings are supported by the record. Mr. Topovski had experience using the court system to exercise his rights to his children. He also testified that he had worked on a motion for visitation regarding C.L.S. The fact that he did not pursue his motion does not appear to have been based on any actions by the Cicconettis. Accordingly, we cannot say that the probate court lost its way when it found that he failed without justifiable cause to provide more than de minimis contact with C.L.S. during the one year period that preceded Mr. Cicconetti's adoption petition. Mr. Topovski's second assignment of error is overruled.

## III.

{¶23} Mr. Topovski's assignments of error are overruled. The judgment of the Wayne County Probate Court is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

WHITMORE, J.
MOORE, P.J.
CONCUR

APPEARANCES:

NORMAN R. "BING" MILLER, Attorney at Law, for Appellant.

TOOD E. CHEEK, Attorney at Law, for Appellee.